# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| DARVIN ALEXANDER, | ) | |
| BONITA RENEE ALEXANDER, | ) | |
| | ) | Case No. 11-74515-SCS |
| *Debtors.* | ) | |
| | ) | |
| SOUTHERN BANK AND TRUST COMPANY, | ) | |
| JAMES M. PICKRELL, JR., TRUSTEE ON THE | ) | |
| DEED OF TRUST, | ) | |
| JANICE P. ANDERSON, TRUSTEE ON THE | ) | |
| DEED OF TRUST, | ) | |
| | ) | APN 13-07146-SCS |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARVIN ALEXANDER, | ) | |
| BONITA RENEE ALEXANDER, | ) | |
| LEONTINE BROWN, | ) | |
| ROGERS LEE BROWN, | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| CLARA P. SWANSON, CHAPTER 7 TRUSTEE, | ) | Chapter 7 |
| *Defendants.* | ) | |

## MEMORANDUM OPINION

On November 25, 2013, Southern Bank and Trust, James M. Pickrell, Jr., Trustee on the

Deed of Trust, and Janice P. Anderson, Trustee on the Deed of Trust (collectively, the "Bank")

filed a Complaint ("Complaint") against the defendants Darvin Alexander ("Darvin"), Bonita

Renee Alexander ("Bonita" and, collectively with Darvin, the "Debtors"), Leontine Brown

("Leontine"), Rogers Lee Brown ("Rogers"), the Internal Revenue Service, and Clara P.

Swanson, Chapter 7 Trustee for Darvin and Bonita ("Trustee"). The Trustee, pursuant to Federal

Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b), filed a Motion

to Dismiss the Complaint and a Memorandum in Support ("Memorandum" and, collectively with

the Motion to Dismiss the Complaint, "Motion to Dismiss") on January 13, 2014.  The Bank

filed a response to the Motion to Dismiss on February 13, 2014 ("Response"), to which the

Trustee filed a reply on February 24, 2014 ("Reply").  The Court conducted a hearing on the

Motion to Dismiss on March 12, 2014, at which time the Court took the matter under

advisement.  This Memorandum Opinion constitutes the Court's conclusions of law pursuant to

Federal Rule of Civil Procedure 52, as incorporated into the Federal Rules of Bankruptcy

Procedure by Rule 7052.

## I.    The Complaint

This controversy arises because, as the Complaint succinctly states, "Defendants

Leontine and Bonita were fee simple owners of the Property . . . prior to conveying the Property

to Leontine and Rogers; however, the Deed . . . reflecting the conveyance was apparently not

recorded."  Complaint ¶ 1.

The essential factual allegations of the Complaint are also succinct.  On January 29,

1999, by a deed recorded on February 8, 1999 ("1999 Deed") in the Clerk's Office for the

Circuit Court of the City of Chesapeake ("Clerk's Office"), Leontine and Bonita became the

record owners of real property located at 700 Pleasant Ridge Court, Chesapeake, Virginia, 23320

("Property").  *Id.* ¶ 9.  Leontine and Bonita financed the purchase of the Property by entering into

a loan ("1999 Loan") with BNC Mortgage, Inc. ("BNC"), for which Ocwen Loan Servicing

("Ocwen") was the servicer.  To secure a note payable to BNC in the principal amount of

$200,000.00, Leontine and Bonita conveyed the Property in trust to Dewey B. Morris and

Kimberly M. McGee, as trustees, for the benefit of BNC ("1999 Deed of Trust").  The 1999

Deed of Trust was recorded in the Clerk's Office on February 8, 1999.  *Id.* ¶ 10.

Leontine and Bonita executed a deed on April 19, 2006 ("2006 Deed"), intending to

convey all of their interests in the Property to Rogers and Leontine.  *Id.* ¶ 11.  The 2006 Deed

incorrectly describes Leontine as being "Leotine Brown."  More importantly, however, the 2006

Deed was never recorded in the Clerk's Office.  *Id.* ¶ 12.

Without any apparent knowledge of the scrivener's error in the 2006 Deed or that the

2006 Deed was not recorded, Rogers and Leontine entered into a $475,000.00 loan with the

Bank of the Commonwealth[1] on May 5, 2006 ("2006 Loan"), which was to be secured by a deed

of trust of the same date ("2006 Deed of Trust").  The 2006 Deed of Trust, by and between

Rogers and Leontine, as grantors, to Richard J. Tavss and E. J. Woodard, Jr., as trustees, was

recorded in the Clerk's Office.  *Id.* ¶ 13.  From the 2006 Loan, proceeds of $194,174.27 were

used to pay off and satisfy the 1999 Loan owed by Leontine and Bonita, as evidenced by the

Virginia Certificate and Affidavit of Satisfaction, dated May 25, 2006, which was recorded in the

Clerk's Office.  *Id.* ¶ 14-15.  Thereafter, Rogers and Leontine entered into a second loan with the

Bank of the Commonwealth, in the form of a line of credit ("Line of Credit") to be secured by a

credit line deed of trust ("Credit Line Deed of Trust") on the Property.  *Id.* ¶ 16.  After various

change in terms agreements and a deed of trust modification, on September 27, 2010, Rogers and

Leontine executed a new deed of trust ("2010 Deed of Trust") to secure the payment of the 2006

Loan, the Line of Credit, and any and all other advances and obligations owed to the Bank of the

Commonwealth.  *Id.* ¶ 17.  The 2010 Deed of Trust was recorded in the Clerk's Office and

named Richard J. Tavss and E. J. Woodard, Jr., as trustees, for the benefit of the Bank of the

---

[1] The Bank of the Commonwealth is the predecessor of the Bank.

Commonwealth.  *Id.*  In 2013, the Bank acquired the loans and associated deeds of trust (collectively, the "Deeds of Trust").[2]  *Id.* ¶ 18.

On February 9, 2012, Rogers and Leontine filed a petition under Chapter 11 of the United States Bankruptcy Code (case number 12-70536-SCS) ("Brown Bankruptcy Case").  The Brown Bankruptcy Case was converted to a Chapter 7 case on January 10, 2013.  *Id.* ¶ 21.  Rogers and Leontine listed the Property in their schedules as being jointly owned by them.  *Id.* ¶ 22.  Rogers and Leontine also listed the obligations owed to the Bank under the 2006 Loan and the Line of Credit and indicated that these obligations are secured by the Property.  *Id.* ¶ 23.[3]

On October 10, 2011, Darvin and Bonita filed a Chapter 13 bankruptcy petition ("Petition") (case number 11-74515-SCS) ("Bankruptcy Case").  The Debtors converted their Bankruptcy Case to one under Chapter 7 on November 6, 2013, and the Trustee was appointed as the Chapter 7 trustee.  *Id.* ¶¶ 2-3.  The Debtors did not list the Property in their original bankruptcy schedules.  However, upon conversion, the Debtors amended their schedules to assert that Bonita and Leontine hold the Property as tenants-in-common.  *Id.* ¶¶ 26-27.

The Bank claims that Rogers and Leontine intended that the repayment of the 2006 Loan and the Line of Credit would be secured by the Deeds of Trust.  *Id.* ¶ 33.  The Bank seeks an order (a) declaring Rogers and Leontine to be the owners of the Property; and (b) reforming the 2006 Deed and any other necessary documents to reflect the intention of Rogers and Leontine that the Bank would have a lien on the Property securing the repayment of the 2006 Loan and the Line of Credit.  *Id.* ¶ 34.

---

[2] James M. Pickrell, Jr., and Janice P. Anderson, named plaintiffs in this matter, were later substituted as trustees on the Deeds of Trust discussed *supra*.  Complaint ¶ 19.

[3] On May 21, 2013, Rogers and Leontine received their Chapter 7 discharge, and the Brown Bankruptcy Case was closed on May 29, 2013.  *See In re Brown*, 12-70536-SCS, Docket Entries 99 and 101.

The Bank asserts a number of theories of recovery to achieve this relief.  First, the Bank asserts that a judicial determination and declaration is necessary to remedy the mistake, fraud, or improper conduct that resulted in the 2006 Deed not being recorded and to memorialize the intentions of Rogers and Leontine to give the Bank a security interest in the Property.  *Id.* ¶ 43. Specifically, the Bank seeks a declaration that:

> (i) Leontine and Rogers are the fee simple owners of the Property; (ii) the Debtors do not have any interest in the Property; (iii) the repayment of the 2006 Loan and Line of Credit is secured by Rogers' and Leontine's interest in the Property; and/or (iv) the 2006 Deed of Trust, Credit Line Deed of Trust, and 2010 Deed of Trust constitute a valid, enforceable, and binding lien against the entire Property *nunc pro tunc* to the dates of the respective recordings.

*Id.* ¶ 41.  The Bank also asserts a variety of equitable theories of relief:  reformation of the relevant Deeds of Trust (Count II); equitable subrogation to the lien position of the 1999 Deed of Trust (Count III); imposition of a constructive trust (Count IV); imposition of an equitable lien (Count V); imposition of an implied or resulting trust (Count VI); a finding of unjust enrichment (Count VII); and the direction of specific performance (Count VIII). Finally, the Bank asserts this Court may afford it relief pursuant to § 105 of the Bankruptcy Code (Count IX).

The Trustee disagrees, believing all of the Bank's equitable claims for relief fail as a matter of law as to the Trustee pursuant to § 544(a) of the Bankruptcy Code.  Memorandum at 4. The Trustee believes that the remaining two counts asserted by the Bank fail without regard to the merits of her asserted § 544 defense.  As to the Bank's request for declaratory judgment, the Trustee asserts that no controversy exists, since the Bank's rights have been determined by past events.  Memorandum at 6; Reply at 3.  The Trustee further argues that the Court cannot grant relief under § 105 because such relief is contrary to that specified elsewhere in the Code. Memorandum at 14-15; Reply at 9-10.

II.    Standard of Review

Judge Davis has set forth the standard by which a motion to dismiss is to be adjudicated:

> Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal
> based on a plaintiff's "failure to state a claim upon which relief can be granted."
> Fed. R. Civ. P. 12(b)(6).  In considering a 12(b)(6) challenge to the sufficiency of
> a complaint, Rule 12(b)(6) must be applied in conjunction with the liberal
> pleading standard set forth in Rule 8(a). Rule 8(a) requires: a jurisdictional
> statement, a demand for relief, and "a short and plain statement of the claim
> showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  "Undoubtedly
> great generality in the statement of the[] circumstances [supporting a plaintiff's
> claim] can be permitted so long as the defendant is given fair notice of what is
> being asserted against him."  *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346
> (4th Cir. 2005) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal
> Practice and Procedure: Civil 3d* § 1202, at 94-95 (3d ed. 2004)).  Pursuant to
> this "relaxed standard," unmeritorious claims are best eliminated through liberal
> discovery and motions for summary judgment rather than through motions to
> dismiss.  *Id.*  Accordingly, as recently clarified by the United States Supreme
> Court, a 12(b)(6) motion should only be granted if the complaint does not allege
> "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic
> Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Smith v. McLeskey* (*In re Bay Vista of Va., Inc.*), No. 2:09-cv-46, 2009 WL 2900040, at *2 (E.D.

Va. June 2, 2009) (unreported decision).

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6)[4] tests the sufficiency of a

complaint and does not resolve factual disputes.  *Id.*  Accordingly, a court can "assume the truth

of all facts alleged in the complaint and the existence of any fact that can be proved, consistent

with the complaint's allegations."  *Eastern Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d

175, 180 (4th Cir. 2000).  Not all factual allegations need be taken as true, however; only well-

pleaded allegations should be accepted, along with any reasonable inferences therefrom, all of

which should be viewed in favor of the plaintiff.  *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342,

346 (4th Cir. 2005).  Nevertheless, courts need not accept "legal conclusions drawn from the

facts" nor do courts "need [to] accept as true unwarranted inferences, unreasonable conclusions,

---

[4] Federal Rule of Civil Procedure 12 is incorporated into the Federal Rules of Bankruptcy
Procedure by Rule 7012.

or arguments." *Eastern Shore Mkts.*, 213 F.3d at 180.  Ultimately, a complaint will be deemed sufficient if the defendant is provided sufficient notice of the nature of the claim and the grounds for that claim, so as to find that a plaintiff has "raise[d] a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It remains to test the sufficiency of the Complaint.

III.    Declaratory Judgment as to the Validity of the Bank's Lien

In Count I, the Bank seeks to establish a lien in its favor on Bonita's interest in the Property through this Court's entry of a declaratory judgment:

36. An actual and justiciable controversy exists regarding the 2006 Deed, 2006 Loan, and Line of Credit.

37. All of the parties knew and have acted in such a manner that Leontine and Rogers have the sole and complete interest in the Property and that the Property was to secure the repayment of the 2006 Loan and Line of Credit.

38. However, by mutual mistake, fraud, or for other reasons unknown, the 2006 Deed was apparently not recorded.

39. Thus, the Property should be declared to belong to Leontine and Rogers as reflected in the Brown Bankruptcy Case and as initially scheduled by the Debtors in this [B]ankruptcy Case.

40. The 2006 Deed of Trust and the Credit Line Deed of Trust and the reasonable inferences drawn therefrom reflect that the parties intended that the 2006 Deed of Trust and Credit Line Deed of Trust would be valid, binding, and recorded liens against the entire Property and for the benefit of the [Bank].

41. A judicial determination and declaration is therefore necessary to declare that (i) Leontine and Rogers are the fee simple owners of the Property; (ii) the Debtors do not have any interest in the Property; (iii) the repayment of the 2006 Loan and Line of Credit is secured by Rogers' and Leontine's interest in the Property; and/or (iv) the 2006 Deed of Trust, Credit Line Deed of Trust, and 2010 Deed of Trust constitute a valid, enforceable, and binding lien against the entire Property *nunc pro tunc* to the dates of the respective recordings.

42. The reformation will result in the [Bank] having a valid and binding first, second, and third deed of trust lien on the Property.

43. This equitable action will rectify the mistake, fraud, or improper conduct that led to the 2006 Deed apparently not being recorded, and thus reflect everyone's intention that the [Bank] has a valid secured interest in the Property.

44. This relief, if granted, will not result in any prejudice to any party and will, in fact, result in the avoidance of a windfall to any party.

Complaint ¶¶ 36-43. In essence, Count I of the Complaint prays for the reformation of the subject transaction by deeming the 2006 Deed to have been recorded and is the identical result sought by the Bank in Counts II through IX of the Complaint.

The function of the Federal Declaratory Judgment Act is to provide an additional remedy to a litigant: "The purpose of declaratory judgment is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim." *Riley v. Dozier Internet Law, PC*, 371 F. App'x. 399, 409, 2010 WL 1141079, at *9 (4th Cir. Mar. 24, 2010) (unpublished opinion) (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:50 (4th ed. 2010)). However, use of declaratory judgment has been limited where the conduct in question has already occurred:

> Under federal procedural law, "[d]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (internal quotation marks omitted). The property at issue here was foreclosed on October 12, 2011, as a result of the plaintiffs' default on their mortgage loan. Because the foreclosure has already occurred, declaratory relief is inappropriate. *See id.* at 695-96; *Horvath v. Bank of N.Y.*, *N.A.*, No. 1:09-cv-01129, 2010 WL 538039, at * 1 (E.D. Va. Jan. 29, 2010).

*Mabutol v. Fed. Home Loan Mortg. Corp.*, No. 2:12cv406, 2013 WL 1287709, at *3 (E.D. Va. Mar. 25, 2013) (unreported decision); *see also Davis v. Samuel I. White, P.C.*, No. 3:13cv780, 2014 WL 1604270, at *7 (E.D. Va. Apr. 21, 2014) (slip copy); *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, 3:12CV00049, 2014 WL 652253, at *3 (W.D. Va. Feb. 19, 2014) (slip

copy); *Davis v. Wells Fargo Bank, N.A.*, 3:13CV586-HEH, 2014 WL 106257, at *7 (E.D. Va.

Jan. 8, 2014) (slip copy); *Tucker Materials, Inc. v. Safesound Acoustics, Inc.*, 971 F. Supp. 2d

537, 551 (W.D.N.C. 2013); *Gregory v. FedEx Ground Package Sys., Inc.*, No. 2:10cv630, 2012

WL 2396873, at *8 (E.D. Va. May 9, 2012) (unreported decision); *Tapia v. U.S. Bank, N.A.*, 718

F. Supp. 2d 689, 695-96 (E.D. Va. 2010); *The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d

602, 615 (E.D. Va. 2008).

In the case at bar, the events surrounding the Bank's claims have already occurred,

central of which was the failure to record the 2006 Deed as described in the Complaint.  The

Bank itself manifests the impropriety of declaratory judgment in this instance by asserting

entitlement to relief under the eight other counts asserted in the Complaint, each of which

requests this Court to dispense relief from events that most certainly occurred long ago.  A ruling

in the Bank's favor on these other eight counts would inevitably resolve all of its claims in this

matter.  If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be

permitted.  *See Madry v. Fina Oil & Chem. Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir.

Dec. 27, 1994) (unpublished opinion) (reversing award of declaratory relief where "[t]he

declaratory judgment does not declare any significant rights not already at issue in the contract

dispute"); *Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:13-CV-00312-P, 2014 WL

685557, at *3 (N.D. Tex. Feb. 21, 2014) (slip copy) ("Defendants' counterclaims merely seek

declaratory judgment on issues already pending before the Court—namely, the enforceability of

the non-competition, non-disclosure, and non-interference provisions in Defendants'

employment contracts."); *Metra Indus.*, 2014 WL 652253, at *2 (concluding that when a

declaratory judgment claim is duplicative and "seeks resolution of legal issues that will, of

necessity, be resolved in the course of the litigation of the other causes of action," permitting a declaratory relief claim to proceed serves no useful purpose).

In the context of Federal Rule of Civil Procedure 12(b)(6), courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit. *See, e.g.*, *Metra Indus.*, 2014 WL 652253, at *2 (dismissing declaratory judgment claim where an existing breach of contract claim sought duplicative relief); *Xtria, LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (unreported decision) (dismissing declaratory judgment action under Rule 12(b)(6) where it duplicated an existing breach of contract claim); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 3:05-CV-0880-D, 2006 WL 3691003, at *17-18 (N.D. Tex. Dec. 14, 2006) (unreported decision) (same); *Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*, No. 3:05-CV-1883-P, 2006 WL 2285575, at *3 (N.D. Tex. Aug. 9, 2006) (unreported decision) (dismissing counterclaim for declaratory judgment while noting that "a motion for declaratory judgment that merely restates a party's defenses is insufficient"); *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, LLC*, No. 3:04CV2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (unreported decision) (dismissing declaratory actions that were redundant vis-à-vis issues raised in other causes of action in the pending lawsuit); *Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *2-3 (N.D. Tex. Apr. 25, 2005) (unreported decision) (granting Rule 12(b)(6) motion dismissing counterclaim for declaratory judgment where the disputed issues were already pending before the court).

Accordingly, there being no basis for the assertion of declaratory jurisdiction here, Count I of the Complaint must be dismissed.

IV.   The Trustee's "Strong-Arm Powers" Pursuant to 11 U.S.C. § 544(a)
Defeat All of the Defendants' Equitable Claims to Relief

In Counts II through VIII of the Complaint, the Bank requests that the Court impose

certain equitable remedies available under Virginia law to establish that the Deeds of Trust

constitute valid and binding liens on Bonita's interest in the Property.  If this matter came before

a state court in the Commonwealth of Virginia, the judge would be tasked with balancing the

equities as between Bonita and the Bank.  However, because this controversy arises within the

context of a Chapter 7 bankruptcy case, the Bankruptcy Code imposes an intervening and

superseding equitable consideration:  a Chapter 7 trustee's "strong-arm powers" arising under 11

U.S.C. § 544(a).  In the Motion to Dismiss, the Trustee asserts that the equitable relief requested

in Counts II through VIII of the Complaint is unavailable because, pursuant to § 544(a)(3), the

Trustee possesses the rights and powers of a bona fide purchaser whose interest in the Property

was perfected as of the commencement of the case and takes the Property free of the Bank's

equitable claims to relief.  Memorandum at 3-4.  In response to the Trustee's contention, the

Bank first counters that the Trustee may not rely on § 544(a)(3) to bar the equitable relief it seeks

in this case because she failed to affirmatively assert her "strong-arm powers" by filing an

adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2) to seek a

determination of the validity, priority, and extent of the Bank's interest in the Property.  *See, e.g.*,

Response at 15-17.

Bankruptcy trustees and Chapter 11 debtors-in-possession possess the following rights

and powers pursuant to § 544(a):

> The trustee shall have, as of the commencement of the case, and without regard to
> any knowledge of the trustee or of any creditor, the rights and powers of, or may
> avoid any transfer of property of the debtor or any obligation incurred by the
> debtor that is voidable by--

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).  These rights and powers, commonly referred to as "strong-arm powers," further the Bankruptcy Code's policy of maximizing the value of the estate for creditors by enabling a trustee or Chapter 11 debtor-in-possession to avoid or set aside the claims of third parties to estate property.  *First Cmty. Bank v. E.M. Williams & Sons, Inc.* (*In re E.M. Williams & Sons, Inc.*), Adv. No. 08-03055-KRH, 2009 WL 2211727, at *2 and n.7 (Bankr. E.D. Va. July 17, 2009) (citations omitted) (unreported decision); *In re Plascencia*, 354 B.R. 774, 778 (Bankr. E.D. Va. 2006).  In the present matter, the relevant rights and powers are those of a bona fide purchaser under § 544(a)(3).[5]

Pursuant to § 544(a)(3), a trustee is "statutorily deemed to have purchased the real estate from the debtor for valuable consideration," which enables a trustee to assume all of the rights available to a bona fide purchaser under applicable state law.  *Beskin v. The Bank of N.Y. Mellon*

---

[5] The Trustee argues in the alternative that the Bank cannot prevail on Counts II through VIII of the Complaint because she holds the status of a judicial lien creditor as of the petition date pursuant to § 544(a)(1).  However, the Court need not reach the issue of the Trustee's status as judicial lien creditor because, for the reasons set forth *infra*, the Trustee has properly raised her status as a bona fide purchaser under § 544(a)(3).

(*In re Perrow*), 498 B.R. 560, 571 (Bankr. W.D. Va. 2013). As such, a trustee is also "deemed to have the same knowledge of the creditor's interest as would a hypothetical purchaser under state law" as of the date the bankruptcy petition was filed. *Id.*

Just as the estate's interest in the property of the debtor under 11 U.S.C. § 541(a) is defined by Virginia law, the extent and exercise of a trustee's "strong-arm powers" pursuant to § 544(a) as to third parties is also a matter of state law. *In re Plascencia*, 354 B.R. at 779 ("[T]he trustee has the rights and powers that could be exercised under state law by . . . a bona fide purchaser from the debtor on the filing date."). In Virginia, a bona fide purchaser without notice is protected from the claims of creditors arising from unrecorded instruments by Section 55-96 of the Code of Virginia, which establishes Virginia's "race notice" policy of first in time, first in right. *See Duty v. Duty*, 661 S.E.2d 476, 479-80 (Va. 2008). Section 55-96 provides in pertinent part:

> Every . . . (ii) deed conveying any such estate or term, [and] (iii) . . . deed of trust . . . conveying real estate . . . shall be void as to all purchasers for valuable consideration without notice not parties thereto . . . until and except from the time it is duly admitted to record in the county or city wherein the property embraced in such . . . deed . . . may be.

Va. Code Ann. § 55-96(A)(1) (2013). Accordingly, under Virginia law, a bona fide purchaser for value takes title to property free of any conveyances or encumbrances that are not apparent from the face of the documents in the grantor's chain of title and that a reasonable title examination fails to put the purchaser on inquiry notice. *See Burwell's Adm'rs v. Fauber*, 62 Va. 446, 463 (1871) ("[A bona fide purchaser] is bound, not only by actual, but also by constructive notice . . . . He must look to the title papers under which he buys, and is charged with notice of

all the facts appearing upon their face, or to the knowledge of which anything there appearing

will conduct him.").[6]

The grantor's notice, actual or otherwise, of a competing interest in the property he

conveys is irrelevant. What matters is the grantee's notice, or lack thereof. This concept is

absolutely fundamental to Virginia's race notice laws, and its application spans a great number

of years. *See, e.g.*, *Bridgewater Roller Mills Co. v. Baltimore Bldg. & Loan Ass'n*, 124 F. 718,

719 (C.C.W.D. Va. 1903) ("A., owner of a tract of land, mortgages it to B., who does not record

his mortgage. A. then sells and conveys the same land to C., who becomes a complete purchaser

for value, and without notice of B.'s mortgage. Under such circumstances C. acquires an

indefeasible title . . . ."); *In re Perrow*, 498 B.R. at 571 (citing *Nat'l Mut. Bldg. & Loan Ass'n v.*

*Blair*, 36 S.E. 513, 515 (Va. 1900)) ("[A] purchaser without knowledge of another's failure to

record an instrument may take advantage of the other's failure."); *Bowman v. Holland*, 83 S.E.

_____

[6] The plain language of § 544(a) modifies applicable state law by explicitly providing that a bankruptcy trustee obtains the status of a bona fide purchaser "without regard to any knowledge of the trustee or of any creditor." Applying West Virginia law, which also requires that a bona fide purchaser take without actual notice of a conveyance or encumbrance, the Fourth Circuit Court of Appeals held that a Chapter 11 corporate debtor-in-possession could not avoid a defective deed of trust on the grounds that it was a bona fide purchaser under § 544(a)(3) because the corporation was a party to the underlying transaction and its actual knowledge of the transaction was imputed to the debtor-in-possession as the entities were one and the same. *Pyne v. Hartman Paving, Inc.* (*In re Hartman Paving, Inc.*), 745 F.2d 307, 310 (4th Cir. 1984). The Fourth Circuit's holding in *Hartman Paving* has been widely criticized by courts within and outside of the Fourth Circuit. *See Wilson v. Moir* (*In re Wilson*), 359 B.R. 123, 137, n.7 (Bankr. E.D. Va. 2006). In his dissent in *Hartman Paving*, Chief Judge Winter reasoned that a bankruptcy trustee or debtor-in-possession attains the status of an ideal lien creditor and bona fide purchaser without regard to any actual knowledge he may have of the debtor's obligations because the plain language of § 544(a) provides that the "strong-arm powers" are conferred "without regard to any knowledge of the trustee or of any creditor." *Hartman Paving*, 745 F.2d at 311 (Winter, C.J., dissenting). The many courts that have criticized the holding in *Hartman Paving* have adopted Chief Judge Winter's reasoning. *See, e.g.*, *Dunes Hotel Assocs. v. Hyatt Corp.* (*In re Dunes Hotel Assocs.*), 194 B.R. 967, 981-82 (Bankr. D.S.C. 1995). However, the Court need not speculate as to whether *Hartman Paving* remains good law because this case does not involve a Chapter 11 debtor-in-possession, but rather a Chapter 7 trustee who is a stranger to the transactions underlying the dispute in this matter.

393, 395 (Va. 1914) (citing *Yost v. Critcher*, 72 S.E. 594 (Va. 1910); *Aragon Coffee Co. v. Rogers*, 52 S.E. 843 (Va. 1906); *Lacy v. Wilson*, 18 Va. (4 Munf.) 313, 1814 WL 662 (1814)) ("[N]o proposition of law is better settled than that a purchaser for value without notice takes a good title from a purchaser for value with notice."); *Claiborne v. Holland*, 14 S.E. 915, 916 (Va. 1892) ("[N]othing is better settled than that a purchaser without notice from a purchaser with notice is not affected by such notice.").

A bona fide purchaser of legal title without notice not only takes property free of encumbrances or conveyances, but also takes property free of any latent equities of which she had no actual or constructive notice, including equitable liens, trusts, fraud, and other equitable claims for relief. *Snyder v. Grandstaff*, 31 S.E. 647, 648 (Va. 1898) (quoting *Rorer Iron Co. v. Trout*, 2 S.E. 713, 721 (Va. 1887); *Carter v. Allan*, 62 Va. (21 Gratt.) 241, 1871 WL 4894, at *4 (1871)); *see also HSBC Bank USA, N.A. v. Gold* (*In re Taneja*), 427 B.R. 109, 116 (Bankr. E.D. Va. 2010).

Judge Connelly's opinion in *In re Perrow* illustrates the effect of a bankruptcy trustee's status as a bona fide purchaser under Virginia law vis-à-vis an unrecorded deed of trust. *See In re Perrow*, 498 B.R. at 574-81. There, a lender requested that the court impose equitable remedies nearly identical to those asserted in the instant case to establish liens on the debtors' real property on account of certain unrecorded deeds of trust. *See id.* The court rejected the relief sought by the lender, concluding that the Chapter 13 trustee's status as a bona fide purchaser pursuant to § 544(a)(3) defeated each of the lender's equitable claims. *See id.* Thus, even if the Court assumes *arguendo* that the Bank could successfully prosecute its claims for equitable relief against Bonita, Darvin, Leontine, and/or Rogers in state court, if the Trustee has properly raised her status as a bona fide purchaser of legal title pursuant to § 544(a)(3) as a

defense in this adversary proceeding, the Bank cannot prevail on Counts II through VIII of its
Complaint.

For the reasons set forth below, the Court finds the Trustee has properly raised her status
as a bona fide purchaser pursuant to § 544(a)(3) as a defense and concludes the equitable relief
sought by the Bank in Counts II-VIII must be dismissed.

a.   The Estate's Interest in the Property is Unencumbered

The Bank's argument that the Trustee must file a lien avoidance proceeding in this matter
to raise her "strong-arm powers" is unavailing as a matter of logic because Bonita's interest in
the Property is unencumbered.   The Bank admits that the 2006 Deed, which was intended to
transfer ownership of the Property from Bonita and Leontine to Leontine and Rogers, was never
recorded.   Complaint ¶ 12.   Therefore, the record owners of the Property remain Bonita and
Leontine.   A search of the land records would not reveal any voluntary encumbrances on
Bonita's interest in the Property because a Certificate and Affidavit of Satisfaction was recorded
on May 25, 2006, as to the 1999 Deed of Trust.   *Id.* ¶ 15.   Accordingly, to adopt the Bank's
position that the Trustee must file a lien avoidance adversary proceeding would require the Court
to adopt alternate facts since neither party has alleged that any lien in favor of the Bank exists on
Bonita's interest in the Property.

Further, the Bank's contention that the Trustee must file a lien avoidance adversary
proceeding to raise her "strong-arm powers" is at odds with the relief it seeks in Counts II
through VIII of the Complaint, in which the Bank requests that the Court impose various
equitable remedies to *establish* liens in favor of the Bank on Bonita's interest in the Property.
Not only is the Bank's position irreconcilable with the facts and the relief it seeks in its own
Complaint, but it also requires that the Trustee assume a factual position—that the Bank has a
valid lien on the estate's interest in the Property—in a lien avoidance adversary proceeding that

is inconsistent with her legal theory in this matter[7] to raise her "strong-arm powers."  Both the

Court and the parties are confined to the facts contained in the record in this matter.  For these

reasons, the Court must reject the Bank's argument that the Trustee must file a lien avoidance

adversary proceeding to avoid liens in favor of the Bank on Bonita's interest in the Property that

simply do not exist.

b.  The Plain Language of Section 544(a)

The plain language of § 544(a) does not require the Trustee to file a lien avoidance

adversary proceeding to assert her "strong-arm powers" as a defense to the equitable relief

sought by the Bank.  When interpreting a statute, a court must first examine its plain language.

*U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004).   In its

examination of statutory language, a court construes the language in a manner that gives effect to

all provisions "so that no part will be inoperative or superfluous, void or insignificant." *Corley v.*

*United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004))

(internal quotation marks omitted).   A court's inquiry often ends begins and ends with plain

language because when "the statute's language is plain, the sole function of the courts—at least

where the disposition required by the text is not absurd—is to enforce it according to its terms."

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citing

---

[7] This factual position would also be at odds with the Trustee's legal theory in a related
adversary proceeding.  The Trustee filed a Complaint to Sell Real Property of the Debtor and
Co-Owner Pursuant to 11 U.S.C. § 363 on November 26, 2013.  *Swanson v. Alexander* (*In re
Alexander*), 13-07147-SCS, Docket Entry 1.  The Bank filed a Motion to Intervene on January 2,
2014.  *Id.*, Docket Entry 6.  The Court granted the Motion to Intervene by order entered January
21, 2014.  *Id.*, Docket Entry 10.  The Bank filed its Answer to the Complaint on January 16,
2014.  *Id.*, Docket Entry 8.  Counsel for the Trustee, counsel for Bonita, and counsel for the Bank
appeared at the Pretrial Conference conducted in *Swanson v. Alexander* on January 23, 2014.
The Court continued the matter generally by order entered January 28, 2014, pending the
outcome of the instant adversary proceeding.  *Id.*, Docket Entry 12.

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)) (internal quotation marks omitted).

Section 544(a) provides that "[t]he trustee shall have . . . the rights and powers of, *or* may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by" a judicial lien creditor, an unsatisfied execution creditor, or a bona fide purchaser. 11 U.S.C. § 544(a) (emphasis added). The disjunctive phrasing of § 544(a) establishes two categories of powers granted to a bankruptcy trustee, separated by the word "or": first, the "rights and powers" that a trustee possesses as a judicial lien creditor, unsatisfied execution creditor, or bona fide purchaser; and, second, the trustee's power to avoid transfers and obligations of the debtor that are voidable by a judicial lien creditor, unsatisfied execution creditor, or bona fide purchaser. Because § 544(a) is phrased in the disjunctive, a trustee obtains "a *status* as well as an avoiding power" as a hypothetical judicial lien creditor, unsatisfied execution creditor, or bona fide purchaser as of the commencement of a bankruptcy case. *See In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 255-56 (emphasis added); *see also Rupp v. Duffin (In re Duffin)*, 457 B.R. 820, 828 (B.A.P. 10th Cir. 2011) ("[T]he powers given to a trustee under § 544(a) are not limited to avoidance of transfers but specifically include broader 'rights and powers.'"). *But see In re Mitchell*, No 11-51623, 2014 WL 293911, at *3 (Bankr. M.D.N.C. Jan. 27, 2014) (slip copy).[8] This interpretation of the statute adheres to the basic canon of statutory

---

[8] In *In re Mitchell*, the court held that that the trustee must raise his § 544(a) "strong-arm powers" in a timely filed adversary proceeding to sell the debtors' interest in real property free and clear of a recorded deed of trust, the validity of which was disputed. *In re Mitchell*, 2014 WL 293911, at *3. In so holding, the court did not address the merits of the trustee's argument that the disjunctive structure of § 544(a) empowers a trustee to invalidate a lien regardless of whether the trustee has filed a lien avoidance adversary proceeding. *Id.* at *3 n.2. In the instant matter, however, the Court declines to extend the holding from *In re Mitchell* and will give due significance to Congress' use of the disjunctive in the plain language of § 544(a) because the result in *In re Mitchell* was predicated on a critical fact not present in the instant case. In *In re Mitchell*, the trustee contended that a defect in the legal description rendered the deed of trust on

construction, which dictates that a court must give effect to all words chosen by Congress and ascribe separate meaning to terms connected by a disjunctive, unless context dictates otherwise. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 338-39 (1979). In this case, the context in which the disjunctive is used in § 544(a) does not demand any other interpretation.

Accordingly, the Court must reject the Bank's argument that § 544(a) requires the Trustee to file a lien avoidance adversary proceeding to raise her "strong-arm powers" because it ignores Congress' clear use of the disjunctive in the statutory text. The Court further concludes that the plain language of § 544(a) confers upon the Trustee the rights and powers available to a bona fide purchaser under state law, which she may exercise to the same extent they are available under state law, whether or not she has filed an adversary proceeding to determine the extent, validity, and priority of a lien.

### c. The Defensive Exercise of § 544(a)

The Trustee is entitled to raise her "strong-arm powers" under § 544(a) as a defense to a superior claim to an asset of the estate, without regard to whether she has raised such powers in a lien avoidance adversary proceeding. Courts have commonly recognized that § 544(a) may be raised defensively by a trustee or Chapter 11 debtor-in-possession, even if it has not been affirmatively asserted in an adversary proceeding. *Newman Grill Sys., LLC, v. Ducane Gas Grills, Inc.* (*In re Ducane Gas Grills, Inc.*), 320 B.R. 324, 335-36 (Bankr. D.S.C. 2004) (citing

---

the real property void and avoidable pursuant to § 544(a), absent any prior adjudication by any court as to the validity of the recorded deed of trust. *Id.* at *1-2. As a result, the effect of the disjunctive structure of § 544(a) was of no moment because an adversary proceeding was necessary to resolve the issue of the sufficiency of the legal description in the recorded deed of trust and its effect, if any, on the validity of the lien on the debtors' interest in the real property. *Id.* at *3. In the present case, the land records, upon which the Trustee—who holds the status of a bona fide purchaser pursuant to § 544(a)(3) as of the commencement of the case—is entitled to rely, would reveal that Bonita is a record owner of the Property and her interest in the Property is unencumbered. The absence of any liens on Bonita's chain of title to the Property renders the holding in *In re Mitchell* inapposite here.

*Pa. Capital Bank v. Glosser* (*In re Allen*), 228 B.R. 115, 117-18 (Bankr. W.D. Pa. 1998); *Mullins v. Paradise & Assocs.* (*In re Paradise & Assocs.*), 217 B.R. 452, 454 (Bankr. D. Del. 1997); *Gen. Elec. Capital Corp. v. Spring Grove Transp., Inc.* (*In re Spring Grove Transp., Inc.*), 202 B.R. 862, 863-64 (Bankr. E.D. Va. 1996); *Olsen v. Russell* (*In re Kleckner*), 81 B.R. 464, 465-66 (Bankr. N.D. Ill. 1988)).   Moreover, courts have permitted the defensive exercise of § 544(a) even in cases where the filing of an adversary proceeding by a trustee or debtor-in-possession would be time-barred by the statute of limitations.   *Ducane Gas Grills*, 320 B.R. at 336 (citing *In re Loewen Group Int'l, Inc.*, 292 B.R. 522, 527-28 (Bankr. D. Del. 2003); *In re Coan*, 96 B.R. 828, 831 (Bankr. N.D. Ill. 1989)); *see also Lassman v. Poulos* (*In re Am. Pie, Inc.*), 361 B.R. 318, 324 (Bankr. D. Mass. 2007); *Wallick v. Cambio* (*In re Block*), 259 B.R. 498, 502 (Bankr. D.R.I. 2001).

The rationale for the defensive use of § 544(a) by a trustee or debtor-in-possession is twofold.   First, a trustee's defensive exercise of her § 544(a) "strong-arm powers" is permissible by reference to 11 U.S.C. § 502(d), which provides for the disallowance of claims, and is triggered when a third-party makes a claim against property of the estate or asserts a superior interest in property of the estate, regardless of whether a formal proof of claim has been filed.   *In re Asia Global Crossing, Ltd.*, 344 B.R. at 255.   Second, as discussed in the previous section, the plain language of § 544(a) confers upon the trustee the status of a bona fide purchaser, which affords a trustee the same defenses available to a bona fide purchaser in state court title proceedings.   *Id.* at 255-56.

The issue of the defensive use of § 544(a) was considered in *Ducane Gas Grills.*   There, the plaintiffs asserted that they held a property interest in an asset sold by the Chapter 11 debtor-in-possession to a third-party purchaser at a sale conducted pursuant to 11 U.S.C. § 363 without

formal notice to the plaintiffs, and, therefore, they (the plaintiffs) were not bound by the sale of the asset. *Ducane Gas Grills*, 320 B.R. at 332. The debtor-in-possession and the third-party purchaser defended on the grounds that the debtor's "strong-arm powers" under § 544(a) superseded the unperfected interest in the asset claimed by the plaintiffs and permitted the debtor to sell the asset to the third-party purchaser free and clear of any interest of the plaintiffs. *Id.* at 335, 336 n.12. In support of its holding that the sale of the asset was proper, the court reasoned that the debtor could raise its "strong-arm powers" as a defense to the plaintiffs' assertion of a superior claim to the asset without raising such powers in an adversary proceeding because the operation of § 544 rendered the plaintiffs' unperfected interest in the asset unenforceable against the Chapter 11 estate. *Id.* at 336.

Like the plaintiffs in *Ducane Gas Grills*, who held an unrecorded and unperfected property interest in an asset of the debtor, the Bank does not hold a lien of record against Bonita's interest in the Property. The Bank instead asks the Court to encumber Bonita's interest in the Property by imposing liens via equitable remedies. Given the similar battle of rights at issue in this case, the Court must echo the reasoning set forth by Judge Waites in *Ducane Gas Grills*. The Trustee need not file an adversary proceeding to assert her "strong-arm powers" as a defense to the Bank's equitable claims for relief set forth in Counts II through VIII because these claims are unenforceable against the bankruptcy estate by operation of § 544(a)(3). As a bona fide purchaser under § 544(a)(3) as of the commencement of the case, the Trustee takes Bonita's interest in the Property free of any latent equities in favor of the Bank.

In summary, the reason why the Bank cannot prevail on its equitable claims for relief is simple: a hypothetical third-party purchaser of Bonita's interest in the Property on the petition date, relying upon the recorded chain of title, would find that Bonita owns a half-interest in the

Property as co-tenants with Leontine and that the 1999 Deed of Trust granted by Bonita and

Leontine was satisfied on May 25, 2006.  Complaint ¶¶ 9-10, 15.  Pursuant to § 544(a)(3), the

Trustee stepped into the shoes of that hypothetical third-party purchaser without notice of any

subsequent conveyance or encumbrance of the Property, and against whom the Deeds of Trust

and any equitable claims for relief in favor of the Bank are unenforceable.

V.   Delivery of the 2006 Deed

At the March 12, 2014 hearing on the Motion to Dismiss, the Bank advanced an alternate

theory in support of its argument that the Trustee's rights and powers pursuant to § 544(a) are

not dispositive of the issues in this matter.  Although not stated explicitly in the Bank's

pleadings, at the hearing the Bank appeared to claim a superior right in the Property on the

grounds that the 2006 Deed was delivered, thereby transferring ownership of the Property from

Leontine and Bonita to Leontine and Rogers.  The only allusion to this argument in the

Complaint is the Bank's assertion that Leontine and Bonita "intended to convey all of their

interests in the Property to Rogers and Leontine."  Complaint ¶ 29.

Under Virginia law, a deed is valid and effective to transfer ownership of real property

from a grantor to a grantee only if it has been delivered.  *Bulifant v. Slosjarik*, 277 S.E.2d 151,

152 (Va. 1981).  Whether delivery of a deed has occurred is determined by examining the

intention of the parties.  *Id.* at 153 (quoting *Leftwich v. Early*, 79 S.E.2d 384, 386 (Va. 1913)).

Delivery of a deed "may be actual . . . may be constructive . . . or it may be inferred from the

circumstances."  *Pollock v. Glassell*, 43 Va. (2 Gratt.) 439, 1846 WL 2575, at *10 (1846).

Recordation of a deed may give rise to a presumption of delivery.  *Bulifant*, 277 S.E.2d at 153

(citing *Commonwealth v. Selden*, 19 Va. (5 Munf.) 160, 1816 WL 598, at *3 (1816)).

At the hearing, the Bank asserted that Bonita's and Leontine's intention to convey the Property to Leontine and Rogers is manifest from the facts and circumstances such that the 2006 Deed was delivered even though it was not recorded.  The Bank's argument that delivery of the 2006 Deed gives it a superior right in the Property presumably stems from 11 U.S.C. § 541(a), which provides that, subject to certain exceptions not applicable here, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  As previously mentioned, the nature and extent of a debtor's interest in property for purposes of § 541(a) is determined by reference to applicable state law. *Butner v. United States*, 440 U.S. 48, 54 (1979).  It is axiomatic that the bankruptcy estate does not acquire an interest pursuant to § 541(a) in property in which a debtor has no legal or equitable interest under applicable state law upon the filing of the bankruptcy case.  Thus, on the basis of § 541(a), it appears that the Bank contends that delivery of the 2006 Deed caused the transfer of all rights in the Property from Bonita and Leontine to Leontine and Rogers and, as a result, Bonita had no interest in the Property that became property of the bankruptcy estate.

However, a determination that the 2006 Deed was delivered would not resolve the battle of rights in this case because an inquiry into whether delivery of an unrecorded deed occurred reaches only the issue of whether there was transfer of title as between grantors and grantees. *See Selden*, 1816 WL 598, at *3.  Thus, even assuming *arguendo* that the 2006 Deed was delivered, the Trustee's rights as a bona fide purchaser pursuant to § 544(a)(3) vis-à-vis the Bank are determined by the failure to record the 2006 Deed, *see* Section IV *supra*, not delivery, and the parties agree that the 2006 Deed was never recorded in the Clerk's Office.  As a bona fide purchaser, the Trustee is deemed to have purchased title to a one-half interest in the Property from Bonita and perfected her interest at the moment the Debtors' bankruptcy petition was filed.

Judge Duncan has explained the distinction between interests in property acquired by the

bankruptcy estate pursuant to § 541(a) versus those acquired pursuant to § 544(a):

> The Bankruptcy Code . . . contemplates that a trustee in bankruptcy can
> use § 544(a) even against interests in property in which the debtor actually has no
> rights when the petition is filed.  2 David G. Epstein, Steve H. Nickles, James J.
> White, *Bankruptcy: Practitioner Treatise Series* § 6–61, 116 (1992). . . . The
> essential inquiry is whether, notwithstanding the transfer, a subsequent lien
> creditor or purchaser claiming through the debtor would, under local law, acquire
> rights to the property superior to the interest of the prior transferee.  *Id.* at 116-17.
> "[C]onceding that the property rights of the estate are derivative from the property
> rights of the debtor, still the trustee enjoys additional powers quite independent of
> his powers under Section 541, and in no way derivative from the debtor's rights at
> state law."  *Granada, Inc.*; *Billings v. Cinnamon Ridge, Ltd.*, 92 B.R. 501, 510-11
> (Bankr. D. Utah 1988) (quoting *In re Great Plains Western Ranch Co.*, 38 B.R.
> 899, 904-05 (Bankr. C.D. Cal. 1984)).  Section 544(a) creates a legal fiction of a
> transfer from the debtor to a bona fide purchaser on the date of filing, thereby
> clothing the trustee in whatever legal rights a bona fide purchaser would possess.
> *Geygan v. World Savings Bank* (*In re Nolan*), 383 B.R. 391, 397 (6th Cir. B.A.P.
> 2008).

*In re Houston*, 409 B.R. 799, 807 (Bankr. D.S.C. 2009).

To illustrate the application of the foregoing, the Court offers the following hypothetical.

For purposes of this hypothetical, the Court will assume that delivery of the 2006 Deed occurred

contemporaneously with its execution, so title and ownership to the Property was transferred

from Bonita and Leontine to Leontine and Rogers.  It is undisputed that the 2006 Deed was not

recorded thereafter, but Leontine and Rogers nevertheless succeeded in obtaining loans secured

by Deeds of Trust on the Property that are now held by the Bank.[9]  First, suppose that instead of

filing the instant bankruptcy case on October 10, 2011—and notwithstanding the delivery of the

2006 Deed—Bonita conveyed a half-interest in the Property to a purchaser for valuable

consideration on that date by deed.  Assume also that the purchaser had conducted a reasonable

---

[9] The Court must emphasize that the story would end here had the Bank's predecessor
simply ensured that Leontine and Rogers had good title prior to making the loans secured by the
Property.

title examination in the Clerk's Office prior to consummating the transaction.  Based upon the

facts in the record, the purchaser's examination of Bonita's chain of title to the Property would

reveal the following:  first, the 1999 Deed conveying the Property to Bonita and Leontine,[10]

Complaint ¶ 9; second, the 1999 Deed of Trust, *id.* ¶ 10; and third, the Virginia Certificate and

Affidavit of Satisfaction of the 1999 Deed of Trust, *id.* ¶ 15.   The purchaser would have no

notice of the 2006 Deed or the Deeds of Trust because they would not appear in Bonita's chain

of title due to the failure to record the 2006 Deed.  Finally, suppose that, on October 10, 2011,

following the closing of the transaction, the purchaser records the hypothetical deed from Bonita

to the purchaser in the Clerk's Office.  As a result, the purchaser obtains the rights and powers

under Virginia law of a bona fide purchaser, including the right to take free of any prior

unrecorded conveyances and latent equities.  *See Snyder v. Grandstaff*, 31 S.E. 647, 648 (Va.

1898).  Upon recordation of the hypothetical deed, the purchaser becomes the record owner of

the half-interest in the Property conveyed by Bonita, and the purchaser's rights supersede the

rights of Leontine and Rogers and those of the Bank.

Because the Trustee is able to assert her status as a bona fide purchaser as of the

commencement of the case pursuant to § 544(a)(3) (discussed *supra*), she steps into the shoes of

the purchaser in the foregoing hypothetical.  Accordingly, the Trustee did not acquire her rights

in the Property because Bonita had an interest in the Property that became part of the estate

pursuant to § 541(a).  Instead, the Trustee captured an unencumbered half-interest in the Property

for the benefit of the bankruptcy estate because she acquired the same rights in the Property that

the above-described hypothetical purchaser would have under Virginia law.

---

[10] Neither party disputes that that Bonita and Leontine acquired good title to the Property
by the 1999 Deed, free and clear of any encumbrances or conveyances made by prior owners of
the Property.

For these reasons, effective delivery of the 2006 Deed makes no difference to the outcome here, because the Trustee acquired her rights in the Property as a bona fide purchaser pursuant to § 544(a)(3).

VI.   Equitable Remedy Pursuant to 11 U.S.C. § 105

In Count IX of the Complaint, the Bank asserts its entitlement to relief here relying on 11 U.S.C. § 105 of the Bankruptcy Code.  Specifically, the Bank alleges:

> 80. Under the circumstances, this Court, a court of equity, should follow the maxim that "equity regards as done that which ought to be done."

> 81. Based on the totality of the circumstances and documentation, it was clear that the parties intended that the [Bank] would have a proper and valid security interest in the Property to secure the repayment of the 2006 Loan and Line of Credit.

> 82. Indeed, to not grant the [Bank] a valid security interest in the Property would be giving Bonita and the Chapter 7 Trustee an unconscionable windfall in the form of receiving property without paying a commensurate amount of consideration.

> 83. Therefore, pursuant to 11 U.S.C. § 105, the Court should enter an order establishing that the [Bank] has a valid first-priority lien on the Property.

Complaint ¶¶ 80-83.

The Bank's reliance on § 105 for the substantive relief of granting it a lien on the Property is misplaced.  Section 105(a) of the Bankruptcy Code permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code.  However, the Fourth Circuit Court of Appeals has cautioned courts to refrain from "read[ing] into this language [of Section 105(a)] anything other than its plain meaning . . . ." *Burd v. Walters* (*In re Burd*), 868 F.2d 665, 669 (4th Cir. 1989).  Consequently, the Fourth Circuit has often commented on the limitations on a court's authority under § 105(a).  *See, e.g.*, *Kestell v. Kestell* (*In re Kestell*), 99 F.3d 146, 148 (4th Cir. 1996) ("Section 105 is not, of course, unlimited.  It cannot be invoked, for example, to achieve ends contrary to other specific Code

26

provisions."); *Finney v. Smith* (*In re Finney*), 992 F.2d 43, 44 (4th Cir. 1993) ("[T]his circuit

requires cautious exercise of § 105(a) authority.") (citations omitted); *Grundy Nat'l Bank v.

Looney* (*In re Looney*), 823 F.2d 788, 793 (4th Cir. 1987) ("[T]he actions of this bankruptcy

court, purportedly acting under § 362(e), cannot be countenanced on the basis of the powers

granted in § 105(a).  Given the clear legislative history of § 362(e), it strains reason to say that

the routine continuation of the automatic stay 'is necessary or appropriate to carry out the

provisions' of the Bankruptcy Code.").

The Supreme Court recently acknowledged these longstanding limitations of authority

provided under § 105(a):

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to
> override explicit mandates of other sections of the Bankruptcy Code."  Section
> 105(a) confers authority to "carry out" the provisions of the Code, but it is quite
> impossible to do that by taking action that the Code prohibits. That is simply an
> application of the axiom that a statute's general permission to take actions of a
> certain type must yield to a specific prohibition found elsewhere.  Courts'
> inherent sanctioning powers are likewise subordinate to valid statutory directives
> and prohibitions.  We have long held that "whatever equitable powers remain in
> the bankruptcy courts must and can only be exercised within the confines of" the
> Bankruptcy Code.

*Law v. Siegel*, 134 S. Ct. 1188, 1194-95 (2014) (citations omitted).  In *Law*, the United States

Supreme Court considered whether § 105(a) permitted a bankruptcy court to impose a surcharge

on a debtor's homestead exemption.  Finding that § 522 of the Bankruptcy Code was violated by

the surcharge, Justice Scalia concluded, "Thus, the Bankruptcy Court's 'surcharge' was

unauthorized if it contravened a specific provision of the Code.  We conclude that it did."  *Id.* at

1195.

The identical consideration exists in the case at bar.  To invoke § 105(a) of the

Bankruptcy Code to bestow a first priority lien on the Property to the Bank would negate the

express effect of § 544(a) of the Bankruptcy Code, which provides the Trustee with the rights of

a bona fide purchaser of the Property.  As Justice Scalia and the Fourth Circuit Court of Appeals have repeatedly reminded, the purpose of § 105(a) is to carry out the provisions of the Bankruptcy Code, not to negate the legal effect of a specific code provision.  As such, Count IX is unavailing to the Bank and the Motion to Dismiss as to Count IX must be granted.

### VII.  Summary

For the reasons stated herein, the Court concludes that the Trustee's Motion to Dismiss should be granted as to all counts of the Complaint.  A separate Order will be entered by the Court consistent with the conclusions contained in this Memorandum Opinion.

The Clerk shall transmit a copy of this Memorandum Opinion to Jeffrey L. Marks, counsel for Southern Bank and Trust Company, James M. Pickrell, Jr., Trustee on the Deed of Trust, and Janice P. Anderson, Trustee on the Deed of Trust; Lorin D. Hay, counsel for Darvin Alexander and Bonita Renee Alexander; Leontine Brown; Rogers Lee Brown; Michael J. Martineau, counsel for the Internal Revenue Service; and Kelly M. Barnhart, counsel for Clara P. Swanson, Chapter 7 Trustee.

Entered this 16th day of July, 2014, at Norfolk in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
Chief United States Bankruptcy Judge

Entered on Docket:  July 16, 2014

28